12FEDCRT101:V51ANSWR2.FDC.odt:04/26/12:eff                                    (V5-1)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

ZAHOUREK SYSTEMS, INC.,                )
                                       )   Case No. 1:12-cv-00978-LTB
    Plaintiff-Counterdefendant,        )
                                       )
  vs.                                  )
                                       )
CANINE REHABILITATION                  )
    INSTITUTE, INC,                    )
                                       )
    Defendant-Counterplaintiff         )
                                       )
----------------------------------------------------------------)
                                       )
CANINE REHABILITATION                  )
    INSTITUTE, INC,                    )
                                       )
    Counterplaintiff                   )
                                       )
  vs.                                  )
                                       )
JON ZAHOUREK,                          )
                                       )
    Third-Party Defendant              )

## ANSWER,
## AFFIRMATIVE DEFENSES,
### and
## COUNTERCLAIMS

Defendant Canine Rehabilitation Institute, Inc, ("CRI") answers the VERIFIED PETITION TO COMPEL ARBITRATION UNDER FEDERAL ARBITRATION ACT 9 U.S.C.. §4 ("Petition") as follows:

1.     This is a petition to compel arbitration to proceed on a breach of related terms of an agreement between Plaintiff Zahourek and Defendant Canine.  This petition to compel ar-

Case No. 1:12-cv-00978-LTB

bitration is an expedited, summary proceeding under the Federal Arbitration Act.

Ans.    Defendant CRI denies that it has breached "related terms of an agreement between Zahourek Systems, Inc., ("Zahourek")" and it. The remaining allegations of paragraph 1 are admitted.

2.    Defendant Canine is a party to a contract entitled "Product License Agreement" which involves commerce among the states and as required under the Federal Arbitration Act.

Ans.    The allegations of paragraph 2 are denied.

3.    Defendant Canine has breached the Product License Agreement and other related claims by, among other things, using inappropriate photographs of Plaintiff's models in a manual and inappropriate photographs and/or video of Plaintiff's models on Defendant's website. A true and correct copy of Defendant's website is attached as Exhibit A.

Ans.    Defendant CRI admits that a "true and correct copy of Defendant's website is attached as Exhibit A" to the Petition. The remaining allegations of paragraph 3 are denied.

4.    Plaintiff Zahourek sent a Demand for Arbitration to Defendant Canine. Defendant Canine has failed, neglected, or refused to participate in the arbitration.

Ans.    Defendant CRI denies that it has "failed, neglected, or refused to participate in the arbitration." The remaining allegations of paragraph 4 are admitted.

5.    Plaintiff Zahourek seeks that Defendant Canine to be compelled to arbitration and, alternatively, damages for breach of related violation of rights.

Ans.    Paragraph 5 requires no answer.

6.    Plaintiff Zahourek is a corporation in good standing organized under the laws of the State of New Jersey, having a principle place of business at 2198 W. 15th Street, Loveland, Colorado, 80538, United States.

Case No. 1:12-cv-00978-LTB

Ans.   Defendant CRI lacks sufficient knowledge of the facts alleged in paragraph 6 to either admit or deny them.

7.      Upon information and belief, Defendant Canine is a corporation in good standing organized under the laws of the State of Florida, having a principal place of business at 2701 Twin Oaks Way, Wellington, Florida, 33414, United States.

Ans.   The allegations of paragraph 7 are admitted.

8.      Plaintiff Zahourek is a New Jersey corporation that maintains its principal place of business in the State of Colorado.  Defendant Canine is a Florida corporation that maintains its principal place of business in the State of Florida and has presence in Colorado, for example by teaching numerous courses using Zahourek's models in the Introduction to Canine Rehabilitation class beginning, or at least offered, on and after on September 3-8, 2010 in Broomfield, Colorado of which a true and correct copy of the cover page for the manual is attached as Exhibit B.

Ans.   Defendant CRI lacks sufficient knowledge of whether Plaintiff Zahourek is a New Jersey corporation that maintains its principal place of business in the State of Colorado, but admits that Defendant CRI is a Florida corporation that maintains its principal place of business in the State of Florida and has a presence in Colorado. Defendant CRI also admits that it taught a course on September 3-8, 2010, in Broomfield using a Zahourek model and the manual, the cover of which is attached to the Petition as Exhibit B. The remaining allegations of paragraph 8 are denied.

9.      Under the Federal Arbitration Act, 9 U.S.C. §1, the transactions and contract or agreement that is the subject of this petition to compel involve commerce among the several states (i.e., interstate commerce), and the controversies that are the subject of the action arise out of said transactions and contract or agreement as evidenced in a true and correct copy of the

Case No. 1:12-cv-00978-LTB

invoices attached as Exhibit C showing Zahourek involving commerce between Colorado and Florida.  The agreement is not a "contract of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. §1.

Ans.    Defendant CRI admits that it engaged in transactions involving commerce among the several states. The remaining allegations of paragraph 9 are denied.

10.    Under the Federal Arbitration Act, 9 U.S.C. § 2 this is a "contract evidencing a transaction involving commerce" that includes terms to settle by arbitration a controversy thereafter arising out of such contract.  It also involves a "refusal to perform the whole or any part thereof." Under the Federal Arbitration Act, 9 U.S.C. § 2, this contract is to be deemed "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Ans.    The allegations of paragraph 10 are denied.

11.    Plaintiff Zahourek is the party aggrieved by the failure, neglect, or refusal of Defendant Canine to arbitrate under the written agreement.  Defendant Canine is in default by failure to comply with the arbitration agreement.  *See* Federal Arbitration Act, 9 U.S.C. § 4. Accordingly, Plaintiff Zahourek petitions this Court for an order directing that such arbitration proceed in the manner provided for in the agreement.  Pursuant to the Federal Arbitration Act, upon service of this formal written application, Defendant Canine has five days to respond.  *See Id*.

Ans.    Defendant CRI admits that it has five days [now extended to two weeks by Order of Court] to respond to Plaintiff Zahourek's Petition. The remaining allegations of paragraph 11 are denied.

Case No. 1:12-cv-00978-LTB

12.     To further support jurisdiction, diversity of citizenship exists between the Plaintiff and Defendant.  The amount in controversy exceeds the sum or value of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, which is the minimum required for federal diversity jurisdiction.  Save for such agreement, this United States district court, would have jurisdiction under Title 28, namely 28 U.S.C. § 1332(a)(1), in this civil action of the subject matter arising out of the controversy between the parties.  *See Id.*

Ans.     Defendant CRI agrees that seventy-five thousand dollars ($75,000.00) is the minimum required for federal diversity jurisdiction. The remaining allegations of paragraph 12 are denied.

13.     This Court also has personal jurisdiction over Defendant because, upon information and belief, Defendants have purposely availed themselves of the privilege of acting in or causing important consequences in the State of Colorado, or otherwise had continuous and systematic general business contacts with the State of Colorado in such a manner that it would be foreseeable that such activities would result in copyright infringement and unfair competition in Colorado.  Further, the exercise of personal jurisdiction over Defendants by this Court is reasonable and consistent with the Federal Due Process Clause. In addition, Defendant has conducted business in Colorado, an example of which is attached as Exhibit B.

Ans.     Defendant CRI does not know to whom the word "Defendants" in line 6 refers. Defendant CRI admits that it has conducted business in Colorado. The remaining allegations of paragraph 13 are denied.

14.     Venue is proper in this Court according to the Federal Arbitration Act, 9 U.S.C. § 4 which states:  "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order direction such arbitration is filed."

Case No. 1:12-cv-00978-LTB

Ans.    The allegations of paragraph 14 are denied.

15.    Venue is also appropriate for alternative relief because Plaintiff's claims arose in this District and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this District and Defendants are subject to personal jurisdiction in this District.

Ans.    The allegations of paragraph 15 are denied.

16.    To further support proper venue, upon information and belief, Defendant Canine has given courses in Colorado, including at least Broomfield, Colorado, for example by teaching courses using Zahourek's models (that are at least a part of the subject of the contract) in the Introduction to Canine Rehabilitation class offered on September 3-8, 2010 in Broomfield, Colorado of which a true and correct copy of the cover page for the manual is attached as Exhibit B.

Ans.    Defendant CRI has given courses in Colorado including Broomfield, Colorado, using Plaintiff Zahourek's models. The remaining allegations of paragraph 16 are denied.

17.    Plaintiff has developed a learning system which offers a kinesthetic approach to learning anatomy by applying clay to anatomical models.  This is protected under Agreement rights and various related copyright and trademark rights.  Plaintiff sells various systems and products including related copyrighted canine models under its registered trademark CANIKEN®.

Ans.    Defendant CRI lacks sufficient knowledge to determine whether "Plaintiff has developed a learning system which offers a kinesthetic approach to learning anatomy by applying clay to anatomical models." Defendant CRI  admits that Plaintiff Zahourek sells various

Case No. 1:12-cv-00978-LTB

products. Defendant CRI lacks sufficient knowledge to admit or deny that Plaintiff Zahourek has

a registered trademark for "Caniken." The remaining allegations of paragraph 17 are denied.

18.     Defendant has purchased multiple products from Plaintiff.

Ans.     The allegations of paragraph 18 are admitted.

19.     Plaintiff's products are sold with a Product License Agreement attached via

incorporation, *See Hugger-Mugger, L.L.C. v. Netsuite, Inc.*, 2005 U.S. Dist. LEXIS 33003,  and

a statement attached to its products which grants only limited rights to customers to use certain

Zahourek trademarks, prohibits photographs and display of photographs of Zahourek's products,

and includes an arbitration clause for any controversy or claim arising from the agreement or in

any way arising from the relationship or use of Intellectual Property.  A true and correct copy of

a Product License Agreement is attached as Exhibit D.

Ans.     Defendant CRI lacks sufficient knowledge to form a belief as to the truth or

falsity of the allegations of paragraph 19 and accordingly denies them.

20.     Plaintiff's invoices, a true and correct copy attached as Exhibit C, incorporate a

Product License Agreement with the following language:

> Zahourek Systems, Inc. sells products and services only with
> associated Product License rights.  Before you can purchase the
> item(s), you must read and accept the terms of the associated
> Product          License          found          at
> www.anatomyinclay.com/licenserights.html.     Payment for the
> items(s) represents that you have read, understood, and accept the
> Product License terms.

Ans.     Defendant CRI lacks sufficient knowledge to form a belief as to the truth or

falsity of the allegations of paragraph 20 and accordingly denies them.

21.     Defendant has provided payment pursuant to multiple Plaintiff's invoices

including those dated April 23, 2009, April 28, 2009, February 9, 2010, October 15, 2010,

Case No. 1:12-cv-00978-LTB

November 2, 2010, and February 16, 2011, accepting and re-accepting the terms of the invoice and Product License.  See Exhibit C.

> Ans.    The allegations of paragraph 21 are denied.

22.    Plaintiff provides additional notice of the Product License Agreement by placing a sticker on its products, as shown in Exhibit E, with the following language:

> Use of this product is bound by the terms of the associated Product License with Zahourek Systems, Inc. found at www. anatomyinclay.com/productlicense or contact ZSI at 1-800-950-5025.

> Ans.    The allegations of paragraph 22 are denied.

23.    The Product License includes the following excerpt of the arbitration clause as shown in Exhibit D:

> The validity and interpretation of this Agreement shall be governed by and construed in accordance with Colorado law except as to copyright and other proprietary matters which may be preempted by United States laws and international treaties.  In the event of any violation of this Agreement, Zahourek reserves the right to pursue any state law remedies (including contractual remedies) or remedies under federal laws or both.  The parties agree to exclusively submit any controversy or claim arising hereunder or in any way arising from their relationship or use of Intellectual Property to confidential binding arbitration in Larimer County, Colorado, to the extent permissible under law, before a single attorney having experience in enforcement of trademark and intellectual property rights in a growing business and who will enforce the contract according to its terms.  Such arbitration shall be conducted in accordance with applicable law and the Commercial Arbitration Rules (CAR's) of the American Arbitration Association (AAA) with each applicable law modified for efficiency and: a) to avoid the involvement of the AAA, b) to provide for the minimal amount of discovery and other pre-hearing procedures consistent with a fair resolution of the dispute, and c) to endeavor for the dispute to be resolved within 180 days of the arbitrator's appointment unless the arbitrator determines that justice requires otherwise.

> Ans.    The allegations of paragraph 23 are denied.

Case No. 1:12-cv-00978-LTB

24.    Defendant Canine has been provided a copy of the Product License Agreement via a request from Defendant's initial attorney, Mr. Elliot Zimmerman.  A true and correct of the request for a copy of the Product License Agreement from Mr. Zimmerman is attached as Exhibit F.   A copy of a Product License Agreement was sent to Mr. Zimmerman on August 4, 2010 of which a true and correct copy of the correspondence forwarding the Agreement is attached as Exhibit G.

Ans.    Defendant CRI admits that Exhibit F purports to be a request for a copy of the Product License Agreement from Mr. Zimmerman and Exhibit G purports to be a copy of correspondence forwarding a copy of the same to Mr. Zimmerman. Defendant CRI lacks sufficient knowledge to form a belief as to the truth or falsity of the remaining allegations of paragraph 24 and accordingly denies them.

25.    Defendant Canine complied with and also acted in acknowledgement of the agreement.   This is evidenced by, among other aspects, a power point document sent by Defendant  Canine,  which included the copyright statement, "Zahourek Systems ©" on each of the photographs contained therein as shown in photographs such as beginning on page 4, etc., in the true and correct copy of the power point document attached as Exhibit H.

Ans.    Defendant CRI admits that the photographs forming part of Exhibit H bear the legend "Zahourek Systems ©." The remaining allegations of paragraph 25 are denied.

26.    Plaintiff Zahourek sent a Demand for Arbitration to Defendant Canine on March 25, 2011, a true and correct copy of the letter and demand for arbitration is attached as Exhibit I.

Ans.    Defendant CRI admits that the documents attached as Exhibit I were sent to Defendant CRI on or about March 25, 2011.

Case No. 1:12-cv-00978-LTB

27.     Defendant Canine has complied with and also acted in acknowledgement of the agreement and the arbitration terms therein when it accepted and appointed Mr. David Weinstein as the initial arbitrator.

Ans.     Defendant admits that Defendant's counsel, the undersigned Eugene F. Friedman, suggested Mr. Weinstein, amongst others, as a possible arbitrator. The remaining allegations of paragraph 27 are denied.

28.     Defendant Canine via its attorney, Mr. Eugene Friedman thereafter demanded Mr. David Weinstein to recuse himself as the arbitrator arguing partiality with respect to the scheduling of the arbitration and "unseemly chumminess … with Mr. Santangelo" apparently because Mr. Weinstein used a first name in referring to a representative and because delay was not approved, see the true and correct copy of the attached letter from Mr. Eugene Friedman dated November 2, 2011 as Exhibit J.

Ans.     Defendant CRI admits that its counsel demanded that Mr. Weinstein recuse himself. Defendant CRI denies that the reason for this demand was simply "partiality with respect to the scheduling of the arbitration and 'unseemly chumminess . . . with Mr. Santangelo' apparently because Mr. Weinstein used a first name in referring to a representative and because delay was not approved." Defendant CRI states affirmatively that the  reasons for demanding Mr. Weinstein's recusal appear in Mr. Friedman's letter attached as Exhibit J to Plaintiff's Petition.

29.     While not accepting the alleged impropriety, Plaintiff Zahourek via its attorney, in an effort to maintain efficiency, offered to select a new arbitrator, as shown in the true and correct copy of the correspondence sent to Mr. Eugene Friedman on November 4, 2011, attached as Exhibit K.

Ans.     The allegations of paragraph 29 are admitted.

- 10 -

Case No. 1:12-cv-00978-LTB

30.     Defendant Canine responded to the November 4, 2011 correspondence and stated, "I do not agree that there is an enforceable agreement to arbitrate any dispute that may exist between our respective clients." Exhibit L attached as a true and correct copy of correspondence received from Mr. Eugene Friedman, evidencing this statement.

Ans.    The allegations of paragraph 30 are admitted. Pleading further, the referenced correspondence of November 7, from Defendant's counsel Mr. Friedman to Mr. Santangelo (attached as Exhibit L to Plaintiff's Petition) states the following:

> In response to your email of last Friday, November 4, 2011, which is copied below, I am proposing the following three idnividuals (sic) to act as the arbitrator between our respective clients identified above.

This email (again, attached as Exhibit L to Plaintiff's Petition) a*ctually lists three potential arbitrators, proposed by Defendant CRI.* As discussed below in the Affirmative Defenses and the Counterclaims sections, Plaintiff Zahourek initially selected one of these persons to arbitrate and then later *withdrew its selection without selecting another*. Thus, Plaintiff Zahourek failed in its fundamental duty to cooperate in any arbitration process, whether required of Defendant CRI or not. Thus, even if an agreement to arbitrate actually existed (which is contested in the cited sections below) Plaintiff Zahourek has violated and breached it.

31.     However, a new arbitrator was not selected.  Defendant Canine is in default of the agreement to arbitrate.  A true and correct copy of the last correspondence pressing to move forward and sent to Defendant Canine from Plaintiff Zahourek on March 13, 2012 is attached as Exhibit M.

Ans.    The legal conclusion that "Defendant Canine [i.e., CRI] is in default of the agreement to arbitrate" is denied as is the contention that there is such an agreement to arbitrate. The remaining factual allegations of paragraph 31 are admitted. Pleading further,

Case No. 1:12-cv-00978-LTB

notwithstanding the fact that no agreement to arbitrate ever existed between Plaintiff Zahourek and Defendant CRI, Defendant CRI alleges that it in fact provided a list of three *additional* persons to act as arbitrator. (*See* Exhibit L attached to Plaintiff's Petition.) Plaintiff Zahourek selected one of these on November 23, 2011, (*see* the attached Exhibit 1) and then *deselected* that person on December 2, 2011 (*see* the attached Exhibit 2). Thus, Defendant CRI has proposed four persons to act as arbitrator. (S*ee* Exhibit L attached to Plaintiff's Petition and the attached Exhibit 3 in which Mr. Schlyer, acting in behalf of Defendant CRI listed three persons to act as arbitrator.) Accordingly, Defendant CRI denies that it is in default of any agreement to arbitrate, even if one existed, which it does *not.*

32.     Defendant has breached its obligations to Zahourek as attached in the Demand for Arbitration in Exhibit I and is in default under the Product License Agreement attached as Exhibit D.  The nature of the dispute includes breach of contract and, alternatively, related issues of copyright infringement, unfair competition (multiple basis), misappropriation (multiple basis), deceptive trade practices, misrepresentation, each under various states' laws as applicable, business liability, and individual liability for infringement related activities.

Ans.     Defendant CRI denies that the so-called "Product License Agreement" (attached to Plaintiff's Petition as Exhibit D) constitutes an agreement between Plaintiff Zahourek and Defendant CRI and further denies that it breached any obligation that it would have under the "Product License Agreement" if such constituted an agreement with Defendant CRI. Defendant CRI further denies that it has breached any obligation to Plaintiff Zahourek or that it has any in the so-called Demand for Arbitration (attached to Plaintiff's Petition as Exhibit I). The remaining statement in paragraph 32 requires no answer. Pleading further, Defendant CRI alleges that

Case No. 1:12-cv-00978-LTB

Plaintiff Zahourek itself has violated the terms of the so-called "Product License Agreement." Defendant CRI admits that it has challenged the so-called "agreement to arbitrate."

33.     In the matter at hand, Defendant Canine through its attorney, Mr. Eugene Friedman has specifically challenged the agreement to arbitrate, as attached in Exhibit L.   Thus, this is an item for court resolution under the Federal Arbitration Act.   *See* 9 U.S.C. §§ 1, 2, 4; *see also Grosvenor v. Qwest*, Civil Action No. 09-cv-2848-WDM-KMT Order (D.Colo. September 30, 2010)(unpublished order attached as Exhibit N); *see also Rent-A-Center v. Jackson*, 130 S.Ct. 2772, 2278 (June 21, 2010).

Ans.    Defendant CRI admits that it has challenged the existence of an agreement to arbitrate. Defendant CRI also challenges that any agreement to arbitrate is attached as Exhibit L to Plaintiff's Petition. The remaining allegations of paragraph 33, insofar as they require an answer, are denied.

34.     Defendant Canine has also failed, neglected, or refused to arbitrate under the written Product License Agreement as evidenced by Exhibits J, K, L and M.   Thus, this Court is requested to provide an order directing that such arbitration proceed under § 4 of the Federal Arbitration Act.   *See* 9 U.S.C. §§ 1, 2, 4.

Ans.    Defendant CRI denies that it has failed, neglected, or refused to arbitrate or that Exhibits J, K, L, and M, attached to Plaintiff's Petition, show any such refusal. Further, Defendant CRI denies that it has to "arbitrate under the written Product License Agreement" since it, in fact, is not an agreement with Defendant CRI. To the extent that the remaining allegations of paragraph 34 require an answer, they are denied.

Case No. 1:12-cv-00978-LTB

35.    Therefore, Plaintiff files this petition to compel arbitration of the claims asserted in the attached Demand for Arbitration.  Pursuant to well settled precedent, Defendant is required to arbitrate these claims.

Ans.    To the extent that the allegations of paragraph 35 require an answer, they are denied.

36.    "A motion to compel arbitration based on an arbitration agreement is governed by 9 U.S.C. § 4…." *Jeffrey Urbanic v. The Travelers Insurance Company*, 2011 U.S. Dist. LEXIS 50629 at page 17.[1]  The United States Congress, by enacting the Federal Arbitration Act, made clear its intent for arbitration agreements to be enforced as written, and to prevent parties from avoiding their contractual obligations to arbitrate.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238 (1985).  Arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  In addressing questions of arbitrability, there is a "liberal federal policy favoring arbitration agreements." *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1197 (10th Cir. 2009) (quoting *Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)).

Ans.    To the extent that the allegations of paragraph 36 require an answer, they are denied.

37.    "Under § 4 of the FAA, the Court is required to make a summary determination of the existence of an agreement to arbitrate." *Bernal v. Burnett*, Defendants' Motion to Compel Individual Arbitration and Supporting Memorandum of Law, Case No. 1:10-cv-01917-PAB, US

---

[1]    The Federal Arbitration Act applies since the arbitration agreement is contained in a "contract evidencing a transaction involving commerce" 9 U.S.C. § 2.  Alternatively, if the FAA does not apply, this motion to compel also applies under Colorado law.  *See e.g.*, Colorado Uniform Arbitration Act (CUAA) sections 13-22-201 to -230, C.R.S. (2009).

Case No. 1:12-cv-00978-LTB

DC for Dist of Colo. 8/24/10.  "A motion to compel arbitration under the Federal Arbitration Act is governed by a standard similar to that governing motions for summary judgment." *Grosvenor v. Qwest*, Civil Action No. 09-cv-2848-WDM-KMT Order (09/30/10) at page 8 citing *Stein v. Burt-Kuni One*, LLC, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citing *SmartText Corp. v. Interland, Inc.*, 296 F. Supp.2d 1257, 1262 (D. Kan. 2003)).  "This Court has previously held that when the dispute involves the formation of the arbitration agreement itself, courts apply 'a standard similar to that governing motions for summary judgment.'" *Jeffrey Urbanic v. The Travelers Insurance Company*, 2011 U.S. Dist. LEXIS 50629 at page 17 citing *Stein v. Burt-Kuni One*, LLC, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) (citing *SmartText Corp. v. Interland, Inc.*, 296 F. Supp.2d 1257, 1262 (D. Kan. 2003)).  The proceeding requested is an expedited proceeding, because under § 4 of the Federal Arbitration Act, Defendant has only five days to respond to this petition.  The underlying contract is presumed valid because § 2 of the Federal Arbitration Act states: "… a contract evidencing a transaction involving commerce to settle by arbitration … shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract".  9 U.S.C. §2.

Ans.    To the extent that the allegations of paragraph 37 require an answer, they are denied.

38.    Consistent with the objectives of the Federal Arbitration Act, courts are required to resolve any doubts concerning the scope of an arbitration clause in favor of arbitration. *See e.g., Mitsubishi Motors*, 473 U.S. at 626; *Moses H. Cone*, 460 U.S. at 24-25; *Chelsea*, 567 F.3d at 1201 ("We are told by the Supreme Court, again categorically, that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like

Case No. 1:12-cv-00978-LTB

defense to arbitrability.'") (Gorsuch, J., concurring) (quoting *Moses Cone*, 460 U.S. at 24-25).

"Thus, as with any other contract, the parties' intentions control, but those intentions are

generously construed as to issues of arbitrability." *Mitsubishi Motors*, 473 U.S. at 626.   The

Supreme Court has described Section 2 "as reflecting both a liberal federal policy favoring

arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility,*

*Inc. v. Concepcion*, 131 S. Ct. 1740, 1742 (2011) (internal quotations and citations omitted)

citing *Rent-A-Center v. Jackson*, 130 S.Ct. 2772, 2278 (June 21, 2010).

Ans.   To the extent that the allegations of paragraph 38 require an answer, they are

denied.

39.   The Defendant has specifically challenged the validity of an agreement to submit

disputes over the agreement to arbitrate.   This Court has jurisdiction to address this petition.   *See*

*Grosvenor v. Qwest*, Civil Action No. 09-cv-2848-WDM-KMT Order (09/30/10); *see also Rent-*

*A-Center v. Jackson*, 130 S.Ct. 2772, 2278 (June 21, 2010).

Ans.   To the extent that the allegations of paragraph 39 require an answer, they are

denied. Pleading further, Defendant CRI challenges the existence of any agreement to submit

any disputes between Plaintiff Zahourek and Defendant CRI to arbitration.

40.   The existence of an agreement to arbitrate is established.   The Tenth Circuit relies

on state law principles of contract formation to determine the existence of an agreement to

arbitrate an issue or claim.   *See Jeffrey Urbanic v. The Travelers Insurance Company,* 2011 U.S.

Dist. LEXIS 50629 at page 18 citing *Avedon Eng'g, Inc.*, 126 F.3d at 1287.   An agreement such

as the present one was accepted under such standards for Colorado in *Grosvenor, supra.* citing

*Hugger-Mugger L.L.C. v. Netsuite, Inc.*, 2005 WL 2206128 (D. Utah 2005).   Colorado Courts

have stated that where a License Agreement expressly incorporated by reference certain "Terms

Case No. 1:12-cv-00978-LTB

of Service," which were posted online, such terms are valid, enforceable, and binding.  S*ee*

*Grosvenor v. Qwest*, Civil Action No. 09-cv-2848-WDM-KMT Order (09/30/10) at page 15.

Ans.   Defendant denies that the existence of agreement between Plaintiff Zahourek and

Defendant CRI to arbitrate is established. To the extent that the remaining allegations of

paragraph 40 require an answer, they are denied.

41.   Plaintiff has a valid and enforceable arbitration agreement with Defendant.

Plaintiff's contract terms were presented in an invoice which referenced the Product License.

See Exhibit C.  Defendant accepted Plaintiff's offer with its conduct, including but not limited to

that of providing payment for the invoice.  Defendant's consideration is the payment of the

invoice to Plaintiff and Plaintiff's consideration is the product which was shipped to Defendant

and the grant of certain limited rights to use certain Zahourek products, certain copyrights, and

certain trademarks.

Ans.   The allegations of paragraph 41 are denied.

42.   Defendant accepted the terms of the invoice including the Product License

Agreement each time Defendant additionally purchased products from Plaintiff.  Thus, upon

information and belief, Defendant has received seven notices of the Product License Agreement

in the various invoices as shown in Exhibit C.

Ans.   The allegations of paragraph 42 are denied.

43.   In addition, Plaintiff provides additional notice of the Product License Agreement

to Defendant and other customers by including notice via a sticker on the product itself.  *See*

Exhibit E.

Ans.   The allegations of paragraph 43 are denied.

Case No. 1:12-cv-00978-LTB

44.    Even after Defendant was affirmatively advised of the license agreement, Defendant continued to purchase and use items.  See Exhibit G and pages 4-7 of Exhibit C (showing that Defendant was provided a copy of the Product License Agreement on August 4, 2010 and Defendant purchased items thereafter on October 10, 2010, November 2, 2010, and February 16, 2011.)

Ans.    Defendant CRI admits that its attorney was provided with a copy of the so-called "Product License Agreement" on August 4, 2010, and it purchased products after that. The remaining allegations of paragraph 44 are denied.

45.    Defendant had the duty to read the terms of the contract and will be held accountable for the terms of the contract it admittedly accepted. *See, e.g.*, *Flight Concepts Ltd. P'ship v. Boeing Co., 38 F.3d 1152, 1157 (10th Cir. 1994)* ("A party cannot void a contract by claiming to be ignorant of its contents."); *B & B Livery, Inc. v. Riehl, 960 P.2d 134, 138 (Colo. 1998)* (It is well settled that one who signs a contract without reading it is barred from claiming he or she is not bound by its terms.); *Hugger-Mugger, L.L.C. v. Netsuite, Inc*., 2005 U.S. Dist. LEXIS 33003 at 17 citing  *Flight Concepts Ltd. P'ship v. Boeing Co*., 38 F.3d 1152, 1157 (10th Cir. 1994) ("A party cannot void a contract by claiming to be ignorant of its contents.")

Ans.    Defendant CRI denies that it accepted the terms of a written contract with Plaintiff or that it "admittedly accepted" such agreement. To the extent that the remaining allegations of paragraph 45 require an answer, they are denied.

46.    Courts have found web-based terms of a sale legally enforceable.  Courts, including this Court, have accepted online terms and conditions when incorporated by reference into numerous forms of commercial agreements.  *See e.g., Grosvenor, supra*, citing *Hugger-Mugger LLC v. Netsuite, Inc*., 2005 U.S. Dist. LEXIS 33003, 2005 WL 2206128 (D. Utah 2005)

Case No. 1:12-cv-00978-LTB

(the License Agreement expressly incorporated by reference certain "Terms of Service" which were posted online);  *Oceanconnect.com v. Chemoil Corporation*, 2008 U.S. Dist. LEXIS 4688 (online terms including arbitration clause enforced); *International Star Registry of Illinois v. Omnipoint Marketing, LLC*, No. 05 C 6923, 2006 US Dist. LEXIS 68420 (N.D. Ill. Sept. 6, 2006) (enforcing a forum selection clause where invoices gave notice of web-based terms); *In re National Steel Corp.*, 316 B.R. 287, 294 (Bankr. N.D. Ill. 2004) ("It is undisputed that the Price Proposal, Purchase Order and Terms and Conditions [available on the buyer's website] created a contract ... between the parties.")

Ans.   To the extent that the allegations of paragraph 46 require an answer, they are denied.

47.   In evaluating whether online terms and conditions are enforceable, courts have generally focused on adequate notice of those terms.  "A document is incorporated by reference into a contract if the contract describes the document and expresses the parties' intent to be bound by its terms" and if the language providing for incorporation is "clear and specific." *International Star Registry of Illinois v. Omnipoint Marketing, LLC, No. 05 C 6923, 2006 US Dist. LEXIS 68420 (N.D. Ill. Sept. 6, 2006.*

Ans.   To the extent that the allegations of paragraph 47 require an answer, they are denied.

48.   Plaintiff provides a statement at the bottom of its invoices which states that the Product License must be read and accepted before the item can be purchased and that payment for the item(s) represents that they have read, understood, and accept the Product License terms. *See* Exhibit C.  This language is a clear and specific expression of the intention to be bound by

Case No. 1:12-cv-00978-LTB

the incorporated document evidencing an intention by the parties to incorporate the terms of the Product License.

Ans.    Defendant denies that any agreement entitled "Product License" exists. Defendant CRI further alleges that the verbiage on its invoices speaks for itself. Defendant CRI also affirmatively alleges that it paid for the products it purchased prior to receiving any invoice for them. To the extent that the remaining allegations of paragraph 48 require an answer, they are denied.

49.    Each time Defendant received an invoice, they were notified of the Product License.  In addition, Defendant was notified of the Product License via the sticker notice placed on the products.  Thus, adequate notice to Defendant was provided and payment of the invoices provides affirmative assent of the terms of the invoice including the Product License terms.

Ans.    Defendant denies that any agreement entitled "Product License" exists. The remaining allegations of paragraph 49 are denied.

50.    In addition, the Product License was easily available to Defendant as Defendant had access to the online terms as expressly stated on the invoice and sticker.  Moreover, the language in the invoice clearly and unequivocally refers to, identifies, and incorporates by reference the Product License.  Defendant even purchased additional products and repeatedly accepted the Product License after it had been provided a separate copy of these exact terms.

Ans.    Defendant denies that any agreement entitled "Product License" exists. The remaining allegations of paragraph 50 are denied.

51.    Therefore, Plaintiff has shown with sufficient verified evidence that an enforceable contract to arbitrate exists.

Ans.    The allegations of paragraph 51 are denied.

Case No. 1:12-cv-00978-LTB

52.    Defendants also cannot dispute that the purported claim falls within the scope of the arbitration clause.  There are no doubts here, as the arbitration agreement broadly encompass that any controversy or claim arising hereunder or in any way arising from their relationship or use of Intellectual Property shall be submitted to binding arbitration under the terms of the clause.  See Exhibit D.

Ans.    The allegations of paragraph 52 are denied.

53.    Accordingly, the Court should summarily compel the Defendants to arbitration.

Ans.    To the extent that the allegations of paragraph 53 require an answer, they are denied.

54.    The reversal of position to now currently refuse to arbitrate is unjustified and improper.  The Product License provides that a "prevailing party may be entitled to recover reasonable attorney fees and costs incurred…." See Exhibit D.   The Plaintiff should be awarded its full attorney fees and all costs to compel this arbitration.

Ans.    Defendant denies that any agreement entitled "Product License" exists. The remaining allegations of paragraph 54 are denied.

55.    Alternatively, the Court should proceed with breach of contract and violation of rights including but not limited to breach of contract and violation of related rights and clauses including but not limited to copyright, unfair competition, and misappropriation.

Ans.    To the extent that the allegations of paragraph 53 require an answer, they are admitted.

Accordingly, Defendant CRI requests an order dismissing Plaintiff's Petition and awarding to Defendant CRI its attorney's fees and costs in defending the present action.

Case No. 1:12-cv-00978-LTB

## AFFIRMATIVE DEFENSES

### *AFFIRMATIVE DEFENSE I*

### LACK OF AGREEMENT

A.      *Defendant CRI Not a "Merchant" under the U.C.C.*

1.      As Plaintiff's Petition makes abundantly clear, Defendant CRI absolutely never took any positive action to agree to or to appear to assent to the terms of any written agreement, including specifically the so-called PRODUCT LICENSE AGREEMENT (often apparently and erroneously referred to by Plaintiff Zahourek as "Product License").

2.      Thus, Plaintiff's Petition tries assiduously to conjure up an implied agreement. Without such an implied agreement, clearly no agreement to arbitrate, specifically, exists between the parties.

3.      Specifically, Plaintiff Zahourek states that it enclosed a copy of the Product License Agreement (Exhibit D of its Petition) with the product it shipped to Defendant CRI. Further, Plaintiff maintains that it referred to the so-called "Product License" on its invoices (Exhibit C of its Petition) and that payment of the invoice constitutes acceptance of the agreement. Lastly, Plaintiff Zahourek claims that it attached a tag (Exhibit E of its Petition) on each of its products making reference to the so-called "PRODUCT LICENSE."      `

4.      Each of these three vehicles suffers from the fatal flaws discussed below.

5.      However, preliminarily, none of the supposed methods of agreement discussed above has applicability to the matter at hand. All of these methods of implying assent to a proposed agreement, under the U.C.C. In Colorado, requires that the party giving such implied assent be a "merchant."

- 22 -

Case No. 1:12-cv-00978-LTB

6.      In the present matter, Defendant CRI does not deal in goods of the type sold by Plaintiff Zahourek. Accordingly, it cannot be considered a "merchant." As a result, none of the three methods of Defendant supposedly giving implied assent to the Product License Agreement (or "Product License") can apply to Defendant CRI.

7.      Accordingly, the Court should find that no agreement to arbitrate exists and concomitantly dismiss Plaintiff's action.

B.      *Defendant CRI Did Not Timely Receive Effective Notice of Any So-Called "Agreement"*

8.      Plaintiff Zahourek claims that it gave notice of its self-labeled Product License Agreement" (variously incorrectly labeled as "Product License") in various manners. (*See* Plaintiff's Petition, paragraphs 19 to 22, answered *supra*.)

9.      However, none of these proved effective relative to Defendant CRI to provide effective notice of any hoped for, novel, and one-sided agreement now claimed by Plaintiff Zahourek.

10.      Thus paragraph 19 of Plaintiff's Petition says, "Plaintiff's products are sold with a Product License Agreement attached *via incorporation* . . . and a statement attached to its products . . . ." (Emphasis added.)

11.      The fundamental flaw with this assertion lies in the fact that none of its supposed methods gave actual notice in a timely fashion or even in any fashion.

12.      The invoices attached as Exhibit C to Plaintiff's Petition show clearly how the parties conducted their business. Each of the *invoices* is marked "PAID." In fact, this legend appears in exactly the same location on each of the invoices, indicated that it had been printed there in the creation of the "Invoice" itself.

- 23 -

Case No. 1:12-cv-00978-LTB

13.     However, the date of each invoice is exactly the same as the "Ship Date." This means that the Invoice was paid on or before the date invoiced which was the date shipped. Clearly, the items were paid for before receipt by the "Ship To" entity. In other words, the "deal" was done *and paid for* prior to the Invoices reaching Defendant CRI.

14.     Thus, the notice, in very fine print, at the bottom of the Invoice referring to the "Product License" (whatever that was), could not possibly have reached Defendant CRI *prior to the time of payment.*

15.     The notice on Plaintiff's invoices, referenced in the prior paragraph, however, states:

> Payment for the item(s) represents that you have read, understood, and accept the Product License terms.

In other words, Defendant CRI is now informed that an action it took previously constitutes agreement with a Product License of which it had no prior (to the transaction) knowledge and no knowledge that its paying its invoice would constitute acceptance.

16.     Moreover, Defendant CRI had a legal duty to pay for what it had ordered. This is almost tantamount to saying, "When you stop at a red light, you have agreed to the hidden two-page contract on our website. And, we didn't tell you about this until you stopped at the light." Simply saying these words shows how unacceptable Plaintiff's contentions in these regards are.

17.     To further compound the duplicity, Plaintiff's website does not contain a "Product License." Accordingly, what is a purchaser agreeing to? A binding contract to forgo important rights (to have a dispute heard in a court of law) cannot rest on such shaky ground.

18.     Further, as indicated above (*see* the answer to Plaintiff's Petition's paragraph 19), no statement regarding the "Product License" was attached to product received by Defendant

Case No. 1:12-cv-00978-LTB

CRI from Plaintiff Zahourek. And, the title of the so-called agreement was incorrect again. Clearly, no agreement resulted.

19.     As for any package insert, again, this arrived well after the purchase was concluded. (This is aside from and in addition to Defendant CRI not being a "merchant," discussed in the prior section.)

20.     Accordingly, Plaintiff Zahourek never provided effective notice of any agreement. For this reason as well, no agreement to arbitrate exists. Defendant CRI respectfully requests this Court to so rule.

## *AFFIRMATIVE DEFENSE II*

### THE SUPPOSED "AGREEMENT" MAKES REFERENCE TO A ZAHOUREK WEBSITE THAT FAILS TO DISCLOSE COPYRIGHT PROTECTION FOR THE "CANIKEN"

21.     The item that Plaintiff accuses Defendant CRI of misusing is a "Caniken," a plastic model that, to some extent, conjures up the skeleton of a dog. Defendant CRI legitimately purchased a small number of these items for use in the classes it teaches on canine rehabilitation.

22.     Plaintiff Zahourek fabricates the Caniken model along with various other models.

23.     The Product License Agreement, a copy of which is attached to Plaintiff's Petition as Exhibit D and the subject of their Petition, says the following:

> 1.     The following is a legal agreement between You (sic) (the purchasing person or entity as specified in the applicable Zahourek sales documentation) and Zahourek Systems, Inc., ("Zahourek") which governs the use of the appropriate trademarks, copyrights, and other proprietary rights as listed on www.anatomyinclay.com/intellectualproperty as may be updated from time to time, related to Zahourek's various products and services for sculpturally based learning models and systems (collectively, the "Intellectual Property").

Case No. 1:12-cv-00978-LTB

However, a visit to the cited website of www.anatomyinclay.com/intellectualproperty, a copy of which for the date of March 28, 2011, reveals no such listing. Accordingly, the cited Product License Agreement would appear to lack applicability to this matter.

### AFFIRMATIVE DEFENSE III

### FRAUD ON THE COPYRIGHT OFFICE – THE CANIKEN IS ONLY A USEFUL ITEM

24.     Plaintiff's Caniken model, which forms the basis of Plaintiff's present claim of copyright infringement, is *only* a "useful item." It only finds use as a tool for teaching canine anatomy. The promotional phrase on Plaintiff's website shown on page 2 of the attached Exhibit 4 makes this use abundantly clear. It says, "The Mind Cannot Forget What the Hands Have Learned." Simply stated, it is a *teaching tool*. As a "useful item," the Caniken simply has no entitlement to copyright protection.

25.     Any question of the Caniken having artistic value aside from its utility disappears when it is realized that the rib cage of the Caniken constitutes a single rippled sheet rather than separate ribs. This give the teaching device sufficient rigidity so that it will break apart when a student attempts to emulate muscle placement by attaching clay to the device. In any event, it has no artistic quality separable from its utilitarian nature.

26     Thus, to obtain a copyright registration on the teaching device known as a Caniken, Plaintiff had to withhold from the Copyright Office the fact that the modified model of the dog skeleton has a useful purpose as a teaching device and, in fact, lacks any visually appealing aspects apart from the utilitarian aspects. The fraud was complete when the Copyright Office, misled by Plaintiff's fraud, issued the registration VA 1692231.

Case No. 1:12-cv-00978-LTB

27.     Now, Plaintiff Zahourek seek to involve this Court, unwittingly, in its fraud by bringing the present matter before it without informing it of the lack of entitlement of the Caniken teaching device to copyright protection. This Court should not allow itself to be so misused and should dismiss Plaintiff's Petition and award to Defendant CRI its attorney's fees in defending the present action.

### AFFIRMATIVE DEFENSE IV

### FRAUD ON THE COPYRIGHT OFFICE –<br>DR. VAN DYKE OF DEFENDANT CRI<br>IS A JOINT AUTHOR OF THE CANIKEN

28.     Dr. Van Dyke, DVM is veterinarian and a diplomate of the American College of Veterinary Sports Medicine and Rehabilitation. She is a pioneer and recognized expert in the field of canine rehabilitation and the founder of Defendant CRI.

29     Jon Zahourek, the founder and former president of Plaintiff Zahourek, set about developing a quasi-skeletal device for the hands-on teaching of canine anatomy including, in particular, the attachment of muscles made from moldable clay to skeletal elements.

30.     Dr. Van Dyke learned of the device developed by Mr. Zahourek for teaching equine anatomy. She approached him and suggested that he develop a similar device for teaching canine anatomy. Dr. Van Dyke received a prototype canine teaching device in 2003 which Mr. Zahourek asked her to use in her Introduction to Canine Rehabilitation class. The problem developed for Mr. Zahourek that he did not have a satisfactory knowledge of canine anatomy to accomplish his task satisfactorily; the teeth and vertebrae in proposed device were not anatomically correct. Dr. Van Dyke informed Mr. Zahourek of the change necessary to make the teaching device useful. Upon receiving the next version of the teaching devices, Dr. Van Dyke

Case No. 1:12-cv-00978-LTB

observed that the changes that she had proposed had in fact been incorporated into the device. The net result of this collaboration was the current teaching device known as the Caniken. The primary user of this device was Dr. Van Dyke in her classes at Defendant CRI. But, she could do so only because of the critical contributions that she had made to the teaching device.

31.     Dr. Van Dyke's critical contributions to the teaching device labeled by Plaintiff Zahourek as the Caniken make her a joint author of that work. Yet, Plaintiff Zahourek, when preparing and filing the application for his copyright registration, purposefully and intentionally failed to list Dr. Van Dyke as a joint author. He did so to avoid accounting to her for her critical contributions to the model. In this fashion, he could keep all revenue and profits for himself rather than having to account to the joint author, Dr. Van Dyke.

32.     Thus, Jon Zahourek's filing with the U.S. Copyright Office of a false application for copyright registration was done intentionally and with fraudulent purpose in mind. Accordingly, his doing so constituted fraud on the Copyright Office.

33.     This Court is now being asked by Plaintiff Zahourek to further the fraud he perpetrated on the Copyright Office. This Court should not allow itself to be so misused. It should dismiss Plaintiff's present action and award to Defendant CRI its attorney's fees and costs incurred in defending the present litigation.

### *AFFIRMATIVE DEFENSE V*

### MERGER DOCTRINE

34.     Under copyright law, *ideas* have no entitlement to copyright protection. Only the *expression* of ideas may claim such status.

Case No. 1:12-cv-00978-LTB

35.     The problem arises when an idea has a very limited number of ways of being expressed. In this circumstance, the idea and its limited number of expressions *merge* into each other. The result is that the limited expressions become part of the idea and, concomitantly, lack entitlement to copyright protection. This allows for the continued free flow of ideas throughout society.

36.     The Caniken model that forms the subject of the present litigation stems from the idea of a canine skeleton having interconnected ribs to provide sufficient rigidity to allow for the placement of clay to simulate muscles in the teaching of canine anatomy.

37.     Simply stating the facts of the prior paragraph 36 shows the necessity of applying the merger doctrine to the present matter. The skeletal model must simulate the canine anatomy so that the learning from it has immediate applicability to the actual animal. Deviations from reality make the "teaching" skeleton worthless or worse. Thus, wild, crazy ideas have no place in the teaching-skeleton undertaking.

38.     Accordingly, Plaintiff, in fact, has no rights in the Caniken teaching device to legitimately assert in any arbitration. As a result, the Court should dismiss Plaintiff's present action. Defendant CRI respectfully requests this action

### AFFIRMATIVE DEFENSE VI

### LICENSE

39.     For years, Defendant CRI, with the knowledge and approval of Plaintiff Zahourek, used the Caniken model made by Plaintiff Zahourek to teach canine anatomy. Further, with Plaintiff Zahourek's knowledge and approval, Defendant CRI developed and used a teaching manual in the course for canine anatomy. That manual, as would be expected and as

Case No. 1:12-cv-00978-LTB

was known to Plaintiff Zahourek, employed pictures of the Caniken teaching device with clay, representing specific muscles attached in their proper locations that they would in an actual animal. Again, that is the very purpose and use of the Caniken teaching device.

40.     In fact, Plaintiff's employee, Jeff Poole, often saw and knew that the Caniken teaching device was being used in classes provided by Defendant CRI. In fact, he complimented Dr. Van Dyke on the high quality and effective use of the Caniken teaching device in the classroom and of the effectiveness of her teaching manual that featured pictures of the Caniken teaching device. In particular, he saw, approved, and complimented the creation and utilization of the teaching manual incorporating the pictures of the Caniken teaching device with the strips of clay simulating attached muscles. At no time did Mr. Poole question the appropriateness of the use of the Caniken teaching device or the pictures in the manual in the fashion described above.

41.     Moreover, Mr. Poole of Plaintiff Zahourek sold Caniken teaching devices to Defendant CRI knowing that they would be used to teach canine anatomy in conjunction with a manual showing pictures taken by Defendant CRI. Further, Mr. Poole was informed that such pictures would be taken and used in a manual developed by Defendant CRI.

42.     Knowing that Defendant CRI was making such pictures, creating such manuals, and teaching such classes, Plaintiff Zahourek never, until Defendant CRI's program became a proven success, made any objection to Defendant CRI's activities, all of which Plaintiff Zahourek had always been well aware.

43.     Plaintiff Zahourek's continuing knowledge and approval without objection of Defendant CRI's use and photographing of the Caniken teaching device constitute an implied license to continue doing so and an estopple against belated objection against doing so. For these

Case No. 1:12-cv-00978-LTB

reasons, as well, the Court should dismiss the present action and award attorney's fees and costs against Plaintiff Zahourek.

## AFFIRMATIVE DEFENSE VII

### NO COPYRIGHT INTEREST IN PLAINTIFF

44.    Plaintiff Zahourek (i.e., Zahourek Systems, Inc.) seeks to compel arbitration for a claimed copyright infringement by Defendant CRI. *See* Plaintiff's Petition, paragraph 32 and Exhibit I, under the title, "THE NATURE OF THE DISPUTE" in which Plaintiff Zahourek inserted, inter alia, "copyright infringement."

45.    However, the current records of the Copyright Office list Jon Zahourek as the owner of the copyright of copyright registration VA 1692231. See Exhibit 5.

46    Plaintiff Zahourek has not asserted any ownership rights in the copyright of the Caniken model.

47    Accordingly, Plaintiff Zahourek appears to be insisting on compelling arbitration concerning intellectual property, the Caniken copyright, in which it has claimed no interest.

48    For this reason as well, this Court should dismiss Plaintiff's Petition.

## AFFIRMATIVE DEFENSE VII

### NO COMPETITION BETWEEN THE PARTIES
### WHETHER FAIR OR UNFAIR

49.    Plaintiff's Petition refers to its own DEMAND FOR ARBITRATION (Exhibit I attached to the Petition) as the basis for the present action. Under the heading, THE NATURE OF THE DISPUTE, Plaintive states, *inter alia*, "unfair competition (multiple bases)."

Case No. 1:12-cv-00978-LTB

50.     The problem with this assertion of Plaintiff is that the parties simply do not compete.

51.     As stated throughout its Petition, Plaintiff makes skeletal models of various animals (dogs and humans included) used in teaching anatomy. Plaintiff simply does not teach courses on canine rehabilitation.

52.     Defendant CRI, on the other hand teaches courses on canine rehabilitation. It simply does not create such teaching devices or sell such devices to teaching institutions.

53.     As a matter of fact, Defendant freely acknowledged Plaintiff's contribution of the teaching model in the PowerPoint presentation for its course. (See paragraph 25 of Plaintiff's Petition, which makes reference to its attached Exhibit H, in which Defendant included the legend "Zahourek Systems ©" on each slide of that file.) Accordingly, no competition and no unfairness has occurred, and no basis for arbitration exists.

54.     To further assure the absence of competition, whether fair or unfair, Defendant CRI has now completely ceased the use of any item, quasi-skeletal or other, emanating from Plaintiff.

55.     Thus, to avoid even the "appearance of unfair competition," Defendant CRI has ceased any connection with Plaintiff or any of its products. Thus, the largest, if not only, purchaser of the Caniken teaching device has ceased doing business with Plaintiff Zahourek. How that could possibly aid Plaintiff's business defies rational thought. However, it does show that Defendant CRI never competed unfairly with Plaintiff, and no basis for arbitration exists.

## COUNTERCLAIMS

Case No. 1:12-cv-00978-LTB

### *JURISDICTION AND VENUE*

1.     The present counterclaims arise under acts of Congress relating to copyrights. Accordingly, this Court has jurisdiction of these COUNTERCLAIMS pursuant to 28 U.S.C. §§ 1338 and 1367.

2.     Counterdefendant Zahourek and third party defendant Jon Zahourek reside in the District of Colorado. Accordingly, venue is proper pursuant to 28 U.S.C. § 1400.

### *COUNTERCLAIM I*

### FRAUD ON THE COPYRIGHT OFFICE – THE CANIKEN IS ONLY A USEFUL ITEM

3.     Counterplaintiff CRI restates and realleges paragraphs 24 to 27 of its AFFIRMATIVE DEFENSES, *supra*, and incorporates them here.

4.     Accordingly, Counterplaintiff CRI respectfully requests from this Court an order directing the United States Copyright Office to cancel copyright registration VA 1692231

### *COUNTERCLAIM II*

### FRAUD ON THE COPYRIGHT OFFICE – DR. VAN DYKE OF DEFENDANT CRI IS A JOINT AUTHOR OF THE CANIKEN

5.     Counterplaintiff CRI restates and realleges paragraphs 25 to 32 of its AFFIRMATIVE DEFENSES, *supra*, and incorporates them here.

6.     Accordingly, Counterplaintiff CRI respectfully requests from this Court an order directing the United States Copyright Office to cancel copyright registration VA 1692231.

Case No. 1:12-cv-00978-LTB

### *COUNTERCLAIM III*

### MERGER

7        Counterplaintiff CRI restates and realleges paragraphs 34 to 37 of its AFFIRMATIVE DEFENSES, *supra*, and incorporates them here.

8        Accordingly, Counterplaintiff CRI respectfully requests from this Court an order directing the United States Copyright Office to cancel copyright registration VA 1692231

### *COUNTERCLAIM IV*

### LICENSE

9        Counterplaintiff CRI restates and realleges paragraphs 34 to 38 of its AFFIRMATIVE DEFENSES, *supra*, and incorporates them here.

10        Accordingly, Counterplaintiff CRI respectfully requests from this Court an order declaring that it has a license under all intellectual property claimed by Plaintiff Zahourek or Third Party Defendant Jon Zahourek that would be infringed by the continued use of the Caniken model by Defendant CRI in the same manner as it has in the past.

### CONCLUSION

Plaintiff Zahourek has brought the present litigation to compel arbitration pursuant to supposed agreements that actually do not exist. It seeks the arbitration regarding a claim of infringement of a copyright that lacks validity and which, if it did possess value, includes the owner of Defendant CRI as a joint author. Further, Plaintiff Zahourek lacks a proprietary interest in the copyright which, if valid, forms the basis of its present effort to compel arbitration. For all

Case No. 1:12-cv-00978-LTB

of these reasons, the Court should deny Plaintiff Zahourek's demand to compel arbitration, declare the copyright and its registration for the Caniken teaching device void, but if valid, includes Dr. Jan Van Dyke as a joint author and a co-owner. Lastly, it should award attorney's fees for the present frivolous litigation to Defendant CRI. These actions are respectfully requested.


Dated: April 26, 2012

                                        Respectfully submitted,

                                        /s/  Eugene F. Friedman
                                        Eugene F. Friedman
                                        One of Defendant CRI's Attorneys

Eugene F. Friedman
Gail Tuler Friedman
FRIEDMAN & FRIEDMAN, LTD.
Printers Square – Suite  710
780 South Federal Street
Chicago, Illinois 60605
(312) 922-8882
Fax (312) 922-3616
E-mail gene@friedmanpatents.com

Counsel for Defendant CRI

## VERIFICATION


I declare under penalty of perjury that the foregoing is true and correct.


_____              _____
            Date                                                      Janet Van Dyke

## CERTIFICATE OF SERVICE

I certify that on April 27, 2012, I electronically filed the foregoing with the Clerk of the

Case No. 1:12-cv-00978-LTB

Court by using the CM/ECF system, which will send a notice of such electronic filing to the

following:

> Luke Santangelo, Esq.
> Santangelo Law Offices
> 125 S. Howes Street, 3rd Floor
> Fort Collins, Colorado 80521
> Telephone (970) 224-3175
> Email: Lsantangelo@ideaassetgroup.com
> Facsimile (970) 224-3175

> Counsel for Plaintiff Zahourek Systems, Inc.

/s/      Eugene F. Friedman
